IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Michelin North America, Inc., and ) | |
| Michelin Retread Technologies, Inc., ) | |
| ) | C.A. No. 6:13-1067-HMH |
| Plaintiffs/Counterclaim Defendants, ) | |
| ) | |
| vs. ) | |
| ) | |
| Inter City Tire and Auto Center, Inc., and ) | |
| Inter City Retread, Inc., ) | |
| ) | |
| Defendants/Counterclaim Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Service Tire Truck Centers, Inc., ) | |
| Tire Centers, LLC, James Cavanaugh, ) | |
| William McCabe, William Schafer, ) | |
| Andrew Meurer, and Marc Pasquet, ) | |
| ) | |
| Counterclaim Defendants. ) | |

_____

| | |
|---|---|
| ) | |
| Inter City Tire and Auto Center, Inc. and. ) | |
| Inter City Retread, Inc., ) | C.A. No. 6:13-2752-HMH |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Michelin North America, Inc., Michelin ) | |
| Retread Technologies, Inc., Service Tire ) | |
| Truck Center, Inc., James Cavanaugh ) | **OPINION & ORDER** |
| William McCabe and Oscar Simoes, ) | |
| ) | |
| Defendants. ) | |

The instant matter is before the court on the following motions: Service Tire Truck Center, Inc.'s ("STTC") two motions to dismiss Inter City Tire and Auto Center, Inc. ("ICT") and Inter City Retread, Inc.'s ("ICR") (collectively "Inter City"); Michelin North America, Inc.'s ("MNA") and Michelin Retread Technologies, Inc.'s ("MRT") (collectively "Michelin") motion to dismiss Inter City's second amended counterclaims; Andrew Meurer's ("Meurer"), Marc Pasquet's ("Pasquet"), and William Schafer's ("Schafer") motion to dismiss Inter City's second amended counterclaims; and Tire Centers, LLC's ("TCi") motion to dismiss Inter City's counterclaims. After a thorough review, the court grants in part and denies in part STTC's motion to dismiss; denies as moot STTC's motion to dismiss the first amended counterclaims; grants in part and denies in part Michelin's motion to dismiss; grants Meurer's, Pasquet's, and Schafer's motion and dismisses the claims against them without prejudice; and grants in part TCi's motion to dismiss.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant litigation arises out of a variety of commercial dealer agreements and Michelin Americas Small Tire[2] retail agreements between MNA and ICT, and Michelin Retread Franchise Agreements between MRT and ICR.[3] On September 23, 2013, Michelin filed its

---

[1]Pursuant to Local Rule of Civil Procedure 7.08, the district court may determine motions without a hearing. A hearing is unnecessary because the issues presented have been adequately briefed by the parties.

[2]Inter City refers to these agreements as the "Passenger Tire Agreements" throughout the second amended counterclaim.

[3]There are four operating agreements at issue in the instant litigation: (1) 2009 MNA Authorized Commercial Customer Agreement ("2009 CCA"); (2) 2010 MNA Authorized Commercial Customer Agreement ("2010 CCA"); (3) 2013 MAST Retail Agreement ("2013 MAST Agreement"; and (4) 2005 Michelin Retread Franchise Agreement ("2005 RFA").

second amended complaint. (Second Am. Compl., ECF No. 90.)[4] On November 26, 2013, Inter City filed its answer and alleged counterclaims against Michelin and joined STTC, TCi, James Cavanaugh ("Cavanaugh"), William McCabe ("McCabe"), Schafer, Meurer, and Pasquet as counterclaim defendants. (Ans. & Countercl., ECF No. 118.) On January 24, 2014, Inter City filed its first amended answer and counterclaims. (First. Am. Ans. & Countercl., ECF No. 147.) On March 13, 2014, Inter City filed its second amended answer and counterclaims. (Sec. Am. Ans. & Countercl., ECF No. 175.) (hereinafter referred to as the "SAC").

According to the SAC, the counterclaim defendants engaged in a complex scheme in which Michelin purported to sell tires to Inter City's competitors at prices designed to undercut Inter City's prices and drive Inter City out of business. (SAC ¶ 2, ECF No. 175.) The counterclaim alleges that Michelin sells tires to different purchasers at different prices depending on the status of the purchaser and the intended use of the tire. (Id. ¶ 31, ECF No. 175.) Michelin has three tiers of pricing, where original equipment manufacturers receive the lowest price, National Accounts customers receive the second lowest price, and commercial retail dealers receive the least-discounted level of pricing. (Id. ¶¶ 31-34, ECF No. 175.) ICT and STTC are commercial retail dealers. (Id. ¶ 34, ECF No. 175.)

Beginning around 1990 and through late May 2013, ICT was a dealer of new Michelin truck tires pursuant to commercial customer agreements with MNA. (Id. ¶ 36, ECF No. 175.) ICT also contracted with MNA to sell retail passenger tires pursuant to Michelin Americas

---

(First Am. Compl. Ex. 1 (2009 CCA), ECF No. 6-1); (First Am. Compl. Ex. 2 (2010 CCA), ECF No. 6-2); (First Am. Compl. Ex. 3 (2013 MAST Agreement), ECF No. 6-3); (First Am. Compl. Ex. 4 (2005 RFA), ECF No. 6-4.)

[4]For purposes of clarity and brevity, all citations in ECF refer to C.A. No. 6:13-cv-1067.

Small Tires agreements. (SAC ¶ 41, ECF No. 175.) Beginning around 2000, ICR operated a Michelin franchised tire retreading plant pursuant to Retread Franchise Agreements with MRT. (Id. 44, 47, ECF No. 175.) ICR alleges that Morris Erbesh launched ICR on representations made by Michelin regarding the volume of business that would be generated by the venture. (Id. ¶¶ 45-46, ECF No. 175.) ICR also alleges that McCabe, a Michelin employee, required Erbresh to pay him or companies affiliated with McCabe in order to secure the promised business. (Id. ¶¶ 54-59, ECF No. 175.) ICR did not achieve the promised volume. (Id. ¶ 59, ECF No. 175.)

Inter City alleges that the complex scheme was composed of six parts. (SAC ¶ 60, ECF No. 175.) Pursuant to the "National Account Diversion Fraud Scheme," Michelin diverted tires purchased at National Accounts prices to competitors of Inter City, including STTC, who then would resell the tires to retail customers at lower prices than would otherwise be available. (Id. ¶ 64, ECF No. 175.) As part of this scheme, McCabe, a Michelin employee, in conjunction with Steven Picciocchi ("Picciocchi"), established Tire Supply of NJ. (Id. ¶¶ 67-71, ECF No. 175.) Tire Supply of NJ was designed to appear to be an Associate Dealer of STTC but purchased tires from National Accounts to be resold to dealers including STTC. (Id. ¶ 73, ECF No. 73.) STTC participated by processing these National Accounts sales, which also resulted in STTC receiving an additional $35 commission. (Id. ¶ 75, ECF No. 175.) Tire Supply of NJ was designated STTC's Associate Dealer in order to provide a larger delivery commission to STTC, which was then passed on to McCabe and Picciocchi. (SAC ¶ 77, ECF No. 175.) McCabe further used his position at Michelin to provide "Sales Budget" credits to STTC in addition to the delivery commission to facilitate STTC's channeling of the commission to McCabe and Picciocchi. (Id. ¶ 78, ECF No. 175.)

Additionally, in 2006, Michelin hired Cavanaugh, a former Inter City employee, which, according to the counterclaim, was done to drive Inter City out of business. (Id. ¶¶ 86-87, ECF No. 175.) Around April 2010, Cavanaugh, McCabe, and Picciocchi, recruited ADA Tire Service ("ADA") and Michael Dolan ("Dolan"), ADA's owner to become an Associate Dealer of STTC, promising to use Cavanaugh and McCabe's power as Michelin employees to provide price supports that would be passed on to ADA. (Id. ¶¶ 88-89, ECF No. 175.) Additional retailers also participated in the scheme. (Id. ¶¶ 95-99, ECF No. 175.) Other Michelin managers also discouraged Inter City customers from doing business with Inter City. (SAC ¶¶ 101-02, ECF No. 175.)

Pursuant to the "National Accounts Credit Card Fraud" scheme, Michelin's National Account credit card program was manipulated to allow Inter City's competitors to charge National Accounts prices at the time of purchase to non-National Accounts customers. (Id. ¶ 103-14, ECF No. 175.) STTC participated in this scheme, allowing it to sell tires at prices below normal. (Id. ¶¶ 103-13, ECF No. 175.)

Michelin managers also allegedly used Sales Budget credits to subsidize the scheme to lower the prices of tires sold to dealers by Michelin. (Id. ¶¶ 114-18, ECF No. 175.) Michelin also allegedly approved additional Associate Dealers of STTC to compete with Inter City, which provided additional price support to STTC and allowed the Associate Dealers to undercut Inter City's prices. (Id. ¶ 122, ECF No. 175.) Michelin also offers higher delivery commissions to dealers within the Michelin Commercial Service Network, of which STTC is a member. (SAC ¶¶ 126-28, ECF No. 175.) Finally, Michelin is alleged to have provided tires to TCi at prices normally reserved for government entities, which allowed TCi to avoid federal excise taxes and

offer tires for sale at a lower price in an effort to drive Inter City out of business. (Id. ¶¶ 129-30, ECF No. 175.)

After Inter City learned of evidence of these schemes, Inter City provided the evidence to Michelin, who commenced an internal investigation. (Id. ¶¶ 147-48, ECF No. 175.) Subsequently, Cavanaugh and McCabe, as well as other Michelin executives, were terminated, and Michelin terminated Action Tire as an authorized Michelin dealer. (Id. ¶ 148, ECF No. 175.) Inter City alleges that the price discrimination schemes continue to this day. (Id. ¶ 155, ECF No. 175.)

In late 2012, Inter City's counsel attempted to negotiate with Michelin regarding damages resulting from the scheme. (SAC ¶ 156, ECF No. 175.) On March 19, 2013, Inter City provided Michelin with a draft copy of a complaint it planned to file if a negotiated settlement was not reached. (Id. ¶ 157, ECF No. 175.) After Inter City's counsel expressed concerns regarding the level of service Inter City would receive from Michelin, Michelin's counsel provided assurances that Inter City would receive appropriate and reasonable service from Michelin. (Id. ¶ 158, ECF No. 175.) On April 19, 2013, Schafer sent a letter to ICT notifying it that MNA was terminating ICT's Commercial Customer Agreement effective 30 days from the date of the letter. (Id. ¶ 160, ECF No. 175.) On April 22, 2013, Meurer sent a letter to ICT notifying it that MNA was exercising its right to terminate the Commercial Customer Agreement effective 30 days from receipt of the letter. (Id. ¶ 164, ECF No. 175.) On April 22, 2013, Pasquet sent a letter to ICT notifying it that MNA was exercising its right to terminate the Passenger Tire Agreement effective 30 days from receipt of the letter. (SAC ¶ 167, ECF No. 175.) Inter City alleges that these terminations were done "in retaliation against Inter City for

raising its claims against Michelin." (Id. ¶¶ 162, 166, 169, ECF No. 175.) Inter City alleges that the termination of ICT's contracts will negatively impact ICR's business and that Inter City has already lost a large fleet account as a result. (Id. ¶¶ 171-76, ECF No. 175.)

In the SAC, Inter City alleges the following causes of actions: Count I, Violation of Sections 2(d) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(d) and 13(e), against Michelin; Count II, Violation of Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), against Michelin; Count III, Violation of Section 2(f) of the Robinson-Patman Act, 15 U.S.C. § 13(f), against TCi and STTC; Count IV, Violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 et seq., against Michelin, Schafer, Meurer, and Pasquet; Count V, Breach of Contract-Commercial Customer Agreement, against MNA; Count VI, Breach of the Implied Covenant of Good Faith and Fair Dealing-Commercial Customer Agreement, against MNA; Count VII, Breach of Contract Accompanied by a Fraudulent Act-Commercial Customer Agreement, against MNA; Count VIII, Breach of Contract-Passenger Tire Agreement, against MNA; Count IX, Breach of the Implied Covenant of Good Faith and Fair Dealing-Passenger Tire Agreement, against MNA; Count X, Breach of Contract Accompanied by a Fraudulent Act-Passenger Tire Agreement, against MNA; Count XI, Breach of Contract-Retread Franchise Agreement, against MRT; Count XII, Breach of the Implied Covenant of Good Faith and Fair Dealing-Retread Franchise Agreement, against MRT; Count XIII, Breach of Contract Accompanied by a Fraudulent Act-Retread Franchise Agreement, against MRT; Count XIV, Tortious Interference with Contractual Relations, against TCi, STTC, Cavanaugh, and McCabe; Count XV, Tortious Interference with Prospective Contractual and/or Business Relations, against Michelin, TCi, STTC, Cavanaugh, and McCabe;

Count XVI, Common Law Fraud and Misrepresentation, against Michelin; Count XVII, Common Law Wrongful Termination, against Michelin; Count XVIII, Violation of New Jersey Franchise Practices Act ("NJFPA"), N.J. Stat. Ann. § 56:10-1 et seq., against Michelin; Count XIX, Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq., against Michelin, STTC, Cavanaugh, and McCabe; and Count XX, Violation of New York General Business Law, N.Y. Gen. Bus. Law § 349, against Michelin, TCi, STTC, Cavanaugh, and McCabe.

On February 4, 2014, STTC filed a motion to dismiss the first amended counterclaim. (STTC Mot. Dismiss, ECF No. 152.) Inter City filed the SAC on March 13, 2014. (Sec. Am. Ans. & Countercl., ECF No. 175.) On March 27, 2014, STTC moved to dismiss the SAC. (STTC Mot. Dismiss, ECF No. 182.) Inter City filed its response on April 14, 2014, and STTC submitted its reply on April 24, 2014. (Inter City Mem. Opp'n STTC Mot. Dismiss, ECF No. 197.); (STTC Reply Supp. Mot. Dismiss, ECF No. 212.)

On March 31, 2014, Michelin, Meurer, Schafer, Pasquet, and TCi filed motions to dismiss the SAC. (Mich. Mot. Dismiss, ECF No. 183.); (Meurer Mot. Dismiss, ECF No. 184.); (TCi Mot. Dismiss, ECF No. 185.) Inter City filed its responses on April 21, 2014. (Inter City Mem. Opp'n Mich. Mot. Dismiss, ECF No. 204.); (Inter City Mem. Opp'n Meurer Mot. Dismiss, ECF No. 205.); (Inter City Mem Opp'n TCi Mot. Dismiss, ECF No. 206.) Michelin, Meurer, Schafer, Pasquet, and TCi submitted their replies on May 9, 2014. (Mich. Reply Supp.

Mot. Dismiss, ECF No. 220.); (Meurer Reply Supp. Mot. Dismiss, ECF No. 219.); (TCi Reply Supp. Mot. Dismiss, ECF No. 218.) These matters are now ripe for review.[5]

## II. Discussion of the Law

### A. Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a cause of action if the opposing party fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When presented with a Rule 12(b)(6) motion to dismiss, the court must restrict its inquiry to the sufficiency of the complaint rather than "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

---

[5]On April 30, 2014, Michelin filed a third amended complaint. (Third Am. Compl., ECF No. 216.) On May 15, 2014, Inter City, Michelin, Schafer, Meurer, Pasquet, TCi, and STTC filed a stipulation stating that Inter City planned to file its third amended answer and counterclaims on May 19, 2014, but "the parties stipulate and agree that any rulings on [the pending] motions will apply to the counterclaims contained in Inter City's response to the Third Amended Complaint." (Stipulation 2, ECF No. 221.)

9

**B. Michelin's Motion to Dismiss**

Michelin moves to dismiss Counts I-II, IV-XIII, and XV-XX on the ground that the counterclaims fail to state a claim for vicarious liability. (Mich. Mem. Supp. Mot. Dismiss 8, ECF No. 183-1.) Michelin argues that the SAC alleges conduct that harms Michelin, and an agent's conduct that harms the principal cannot be the basis for a products liability claim. (Id. 8-9, 14-18, ECF No. 175.) The court finds that the SAC alleges claims for vicarious liability. See, e.g., United States v. Automated Med. Labs., Inc., 770 F.2d 399, 407 (4th Cir. 1985) (outlining what constitutes "scope of employment"); Armstrong v. Food Lion, Inc., 639 S.E.2d 50, 52 (S.C. 2006) (outlining the doctrine of respondeat superior under South Carolina law).[6]

Having found that the SAC alleges claims for vicarious liability, the court finds that Inter City has stated a claim upon which relief can be granted, and Michelin's motion to dismiss is denied as to the following claims: price discrimination in violation of Sections 2(d) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(d) and 13(e) (Count I); price discrimination in violation of Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) (Count II), see Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 163 (4th Cir. 1999); (SAC ¶¶ 183-89, ECF No. 175); violations of SCUTPA (Count IV), see Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry, 743 S.E.2d 808, 816 (S.C. 2013); (SAC ¶¶ 195-206, ECF No. 175.); breach of contract arising out of the Commercial Customer Agreement (Count V), breach of contract arising out of the Passenger Tire Agreement (Count VIII), and breach of contract arising out of the Retread Franchise Agreement (Count XI), see Brache Builders, Inc. v. Coggins, 686 S.E.2d

---

[6]Because the court resolves the New York state law claim on other grounds, it need not reach whether the counterclaim alleges a claim for vicarious liability.

10

200, 202 (S.C. Ct. App. 2009); (SAC ¶¶ 207-13, 225-29, 241-245, ECF No. 175.); breach of contract accompanied by a fraudulent act arising out of the Commercial Customer Agreement (Count VII), breach of contract accompanied by a fraudulent act arising out of the Passenger Tire Agreement (Count X), and breach of contract accompanied by a fraudulent act arising out of the Retread Franchise Agreement (Count XIII), see Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (2002); (SAC ¶¶ 219-24, 235-40, 251-56, ECF No. 175.); tortious interference with prospective contractual and or business relations (Count XV), see United Educational Distributors, LLC v. Educational Testing Serv., 564 S.E.2d 324, 328 (S.C. Ct. App. 2002); (SAC ¶¶ 268-73, ECF No. 175.); and common law fraud and misrepresentation (Count XVI), see Redwend Ltd. P'ship v. Edwards, 581 S.E.2d 496, 503-04 (S.C. Ct. App. 2003); (SAC ¶¶ 274-81, ECF No. 175.).

      Michelin argues that Inter City's claims for violation of the implied covenant of good faith and fair dealing should be dismissed because the implied covenant of good faith and fair dealing does not provide a cause of action separate from breach of contract claims under South Carolina law. (Mich. Mem. Supp. Mot. Dismiss 29, ECF No. 183-1.) Inter City makes no argument in reply. "[T]he South Carolina Court of Appeals has affirmatively stated that 'the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract.'" Weaver v. John Lucas Tree Expert Co., C.A. No. 2:13-CV-01698-PMD, 2013 WL 5587854, at *8 (D.S.C. Oct. 10, 2013) (quoting RoTec Servs., Inc. v. Encompass Servs., Inc., 597 S.E.2d 881, 884 (S.C. Ct. App. 2004)). "[T]he implied covenant of good faith and fair dealing should be viewed 'as merely another term of the contract at issue.'"

Id. (quoting RoTec Servs., 597 S.E.2d at 884). Michelin's motion to dismiss as to Counts VI, IX, and XII is therefore granted and those claims are dismissed.

Michelin moves to dismiss Inter City's common law wrongful termination claim, arguing that Inter City has failed to state a claim for wrongful termination. (Mich. Mem. Supp. Mot. Dismiss 25-28, 33, ECF No. 183-1.) The court finds that Inter City has stated a claim for wrongful termination for ICT's agreements, and the motion to dismiss Count XVII is denied as to ICT's claim. See Carolina Cable Network v. Alert Cable TV, Inc., 447 S.E.2d 199, 202 (S.C. 1994); (SAC ¶¶ 282-87, ECF No. 175.) However, Michelin also argues that ICR has failed to state a claim because ICR has not alleged that its agreement was terminated, nor was ICR a party to the terminated agreements. (Mich. Mem. Supp. Mot. Dismiss 33, ECF No. 183-1.) The court agrees. The allegations in the SAC allege termination of the Commercial Customer Agreement and the Passenger Tire Agreement. (SAC ¶¶ 156-170, ECF No. 175.) The SAC does not allege that ICR's Retread Franchise Agreement was terminated. Moreover, ICR was not a party to the Commercial Customer Agreement or the Passenger Tire Agreement, and Inter City makes no argument that a non-party to a contract may maintain a wrongful termination claim. Therefore, Michelin's motion to dismiss ICR's claim in Count XVII is granted.

Michelin moves to dismiss Inter City's claim for constructive termination of ICR in violation of the NJFPA on the ground that the Retread Franchise Agreement contains a South Carolina choice of law provision. (Mich. Mem. Supp. Mot. Dismiss 33, ECF No. 183-1.) Because the constructive termination claim against MRT is predicated upon New Jersey law, Michelin argues that the South Carolina choice of law provision requires Count XVIII's dismissal. (Id.) Inter City makes no argument in opposition to Michelin's argument for

dismissal. See (Inter City Mem. Opp'n Mich. Mot. Dismiss, generally, ECF No. 204.). Pursuant to Section 16.01 of the Retread Franchise Agreement, "[t]his Agreement and all issues arising from or relating to this Agreement shall be governed by and construed under the laws of the State of South Carolina without regard to the application of South Carolina conflict of law principles."  (SAC Ex. B (Retread Franchise Agreement § 16.01), ECF No. 175-2.)  The court has previously construed comparable choice of law provisions and found those provisions valid and enforceable. See (June 24, 2013 Order 6-10, ECF No. 53.)  The court finds the choice of law provision valid and enforceable for the same reasons stated in its June 24, 2013 Order, and South Carolina law controls.  Because Count XVIII is predicated on the application of New Jersey law, Inter City's claim for violation of the NJFPA against MRT is dismissed.

Inter City has consented to dismissal of its New Jersey Consumer Fraud Act claim, Count XIX without prejudice.  (Inter City Mem. Opp'n Mich. Mot. Dismiss 6, ECF No. 204).  Accordingly, Count XIX is dismissed without prejudice.

Michelin moves to dismiss Count XX, which alleges violations of New York General Business Law § 349.  (Mich. Mem. Supp. Mot. Dismiss 22-24, ECF No. 183-1.)  New York General Business Law § 349(a) proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  "Although the statute is, at its core, a consumer protection device, corporate competitors now have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue."  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (citations and internal quotation marks omitted).  "To state a Section 349 claim, a plaintiff must allege that (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the

13

plaintiff was injured as a result." WorldHomeCenter.com, Inc. v. PLC Lighting, Inc., 851 F. Supp. 2d 494, 498 (S.D.N.Y. 2011) (internal quotation marks omitted).

Michelin challenges the first prong of Inter City's § 349 claim, arguing that Inter City fails to allege consumer-oriented conduct sufficient to state a § 349 claim. (Mich. Mem. Supp. Mot. Dismiss 23-24, ECF No. 183-1.) Michelin argues that none of the conduct alleged in the SAC is directed toward consumers. (Id.) Inter City argues that "the injury here is the deceitful manipulation of the marketplace in an effort to eliminate or restrict competition and consumer choice." (Inter City Mem. Opp'n Mich. Mot. Dismiss 26, ECF No. 204.) Inter City claims that the consumer-oriented conduct is the public interest in a "*competitive* market." (Inter City Mem. Opp'n Mich. Mot. Dismiss 27, ECF No. 204.) Inter City describes the consumer injury as one of "lack of competition, not a lack of consumer discounts" because "short-term low prices are not a public good if used to selectively eliminate competition and consolidate control amongst the collusive parties." (Id. 28, ECF No. 204.) The court disagrees.

"Under New York law, a claim implicates consumer-oriented conduct when a deceptive act or practice has a broader impact on consumers at large." Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc., 419 F. Supp. 2d 225, 240 (N.D.N.Y. 2005) (internal quotation marks omitted). "The 'public at large' or 'consumers at large' means the end-users, not the converters." Id. According to the SAC, Michelin discriminated in price against Inter City when its employees used a variety of schemes to lower the price at which Michelin sold its tires to retailers who would then sell those tires to consumers. Michelin's conduct is alleged to have been designed to drive Inter City out of business by undercutting its prices. The SAC does not allege sales at discriminatory prices directly to consumers. "The only time courts have found

indirect interaction with consumers to fall within the purview of § 349 is when the deceptive acts or practices involve threats to public health or safety." Fibermark, 419 F. Supp. 2d at 241.

Inter City relies on In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d 198, 228 (S.D.N.Y. 2012), Macquarie Grp. Ltd. v. Pac. Corporate Grp., LLC, No. 08-CV-2113, 2009 WL 539928, at *9 (S.D. Cal. Mar. 2, 2009), and New York v. Feldman, 210 F. Supp. 2d 294 (S.D.N.Y. 2002), in support of its argument that the "competitive market" theory supports a § 349 claim. However, these cases are factually distinguishable from the cases at bar and fail to support Inter City's position. See In re DDAVP, 903 F. Supp. 2d at 228 (finding that the defendants' alleged fraud "was plausibly designed to prevent competitors' entry into the market, thereby allowing [d]efendants to overcharge consumers"); Macquarie Group, 2009 WL 539928 at *9 (finding that "plaintiffs allege[d] defendant orchestrated a refusal to deal designed to prevent its entry into the market, thereby, allowing defendant to charge supracompetitive prices"); Feldman, 210 F. Supp. 2d at 302 (noting that the "[i]njured parties included, among others, unsophisticated individual sellers such as the elderly and one-time participants").

Michelin further argues that to the extent that the § 349 claim is based on allegations of bad faith termination of the contracts at issue, the claim should be dismissed pursuant to the court's previous order finding that such claims arise out of the contracts which include South Carolina choice of law provisions. (Mich. Mem. Supp. Mot. Dismiss 29, ECF No. 183-1.) Inter City makes no argument in response. The court previously found that claims based on termination of the contracts were "predicated on issues of contractual construction, interpretation, and enforceability" and that South Carolina law applied to such claims. (Aug. 26,

15

2013 Order 4, ECF No. 76.)  Inter City cannot maintain a claim under New York law for termination of the contracts.  Accordingly, Count XX is dismissed.

### C. Meurer, Pasquet, and Schafer's Motion to Dismiss

Meurer, Pasquet, and Schafer move to dismiss Inter City's SCUTPA claim against them. (Meurer Mot. Dismiss, ECF No. 184.)  Inter City has consented to dismissal of this claim without prejudice.  (Inter City Mem. Opp'n Meurer Mot. Dismiss 2, ECF No. 205.) Accordingly, the claims against Meurer, Schafer, and Pasquet are dismissed without prejudice.

### D. TCi's Motion to Dismiss

After considering the arguments of the parties, the court finds that Inter City has stated a claim upon which relief can be granted, and TCi's motion to dismiss is denied as to the following claims:  violation of Robinson-Patman Section 2(f), 15 U.S.C. § 13(f) (Count III), Dayton Superior Corp. v. Marjam Supply Co., No. 07 CV 5215(DRH)(WDW), 2011 WL 710450, at **5-6 (E.D.N.Y. Feb. 22, 2011) (unpublished); (SAC ¶¶ 190-94, ECF No. 175.); tortious interference with contractual relations (Count XIV), Solomon v. Siemens Indus., Inc., No. 11-CV-1321 (DLI)(SMG), 2014 WL 1271192, at *15 (E.D.N.Y. Mar. 26, 2014); Nostrame v. Santiago, 61 A.3d 893, 901 (N.J. 2013); Dutch Fork Dev. Grp. II, LLC v. SEL Properties, LLC, 753 S.E.2d 840, 844 (S.C. 2012); (SAC ¶¶ 257-67, ECF No. 175.); and tortious interference with prospective contractual and/or business relations (Count XV), PKG Grp., LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006); Nostrame, 61 A.3d at 902; Crandall Corp. v. Navistar Int'l Transp. Corp., 395 S.E.2d 179, 180 (S.C. 1990); (SAC ¶¶ 268-73, ECF No. 175.).

TCi moves to dismiss Inter City's New York General Business Law § 349 claim, Count XX, arguing that Inter City has failed to plausibly allege consumer-oriented conduct. (TCi Mem. Supp. Mot. Dismiss 9-10, ECF No. 185-1.) Inter City argues that its "claim is cognizable if it seeks to vindicate the public's interest in an honest marketplace" and "[t]he injury here is the deceitful manipulation of the marketplace in an effort to eliminate or restrict competition and consumer choice." (Inter City Mem. Opp'n TCi Mot. Dismiss 8, ECF No. 206.) The SAC alleges that TCi received price discounts that were available only to government purchasers and avoided the payment of excise taxes in an effort to lower the costs of its tires and drive Inter City out of business. See (SAC ¶¶ 129-30, ECF No. 175.) For the same reasons outlined in Section II.B, supra, the court finds that the SAC does not allege consumer-oriented conduct sufficient to state a § 349 claim. Accordingly, Inter City's § 349 claim against TCi is dismissed.[7]

### E. STTC's Motion to Dismiss

STTC moves to dismiss Inter City's claims on the ground that Inter City improperly joined STTC as a counterclaim defendant when STTC was not an opposing party at the time of the filing of the SAC. (STTC Mem. Supp. Mot. Dismiss 31, ECF No. 182-1.) STTC argues that Rule 14 was the appropriate mechanism to add it as a party, and Inter City's claims should be dismissed because STTC was not properly joined. (Id.) Inter City argues that Rule 13(h) permitted STTC's joinder as a counterclaim defendant. (Inter City Mem. Opp'n STTC Mot. Dismiss 18, ECF No. 197.) The court agrees.

---

[7]Because the court finds that the alleged conduct does not constitute consumer-oriented conduct, the court need not address TCi's argument that the non-payment of taxes is outside the scope of § 349.

Pursuant to Rule 13(h) of the Federal Rules of Civil Procedure, "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Rule 20(b) provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly . . . and (B) any question of law or fact common to all defendants will arise in the action." Inter City's claims for tortious interference with prospective contractual and/or business relations and for violation of New York General Business Law § 349 were asserted jointly against STTC and Michelin, an original party to the complaint. Accordingly, Inter City has satisfied Rule 13(h)'s requirements.

STTC argues in the alternative that Inter City's claims for violating Section 2(f) of the Robinson-Patman Act, 15 U.S.C. § 13(f), and for tortious interference with a contract should be dismissed because they were not asserted jointly against an existing party to the action. (STTC Mem. Supp. Mot. Dismiss 32, ECF No. 182-1.) Inter City argues that "construing the rules in this manner frustrates the purpose of the joinder rules by needlessly requiring a separate lawsuit." (Inter City Mem. Opp'n STTC Mot. Dismiss 19, ECF No. 197.) "'[T]he main purpose of Rule 13(h) is to dispose of an action in its entirety and to grant complete relief to all the concerned parties,' and courts have construed the rule 'liberally in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy.'" Stonecrest Partners, LLC v. Bank of Hampton Roads, No. 7:10-CV-63-FL, 2011 WL 3664412, at *4 (E.D.N.C. Aug. 18, 2011) (unpublished) (quoting Wright, Miller & Kane, Federal Practice & Procedure § 1434). Given that Inter City's claims against STTC arise out of the same operative facts, Inter City properly joined its claims against STTC.

Further, after reviewing the arguments of the parties, the court finds that Inter City has stated a claim upon which relief can be granted, and STTC's motion to dismiss is denied as to the following claims:  violation of Robinson-Patman Section 2(f), 15 U.S.C. § 13(f) (Count III), Dayton Superior, 2011 WL 710450 at **5-6; (SAC ¶¶ 190-94, ECF No. 175.); tortious interference with contractual relations (Count XIV), Solomon, 2014 WL 1271192 at *15; Nostrame, 61 A.3d at 901; Dutch Fork Dev. Grp., 753 S.E.2d at 844; (SAC ¶¶ 257-67, ECF No. 175.); and tortious interference with prospective contractual and/or business relations (Count XV), PKG Grp., 446 F. Supp. 2d at 251; Nostrame, 61 A.3d at 902; Crandall Corp., 395 S.E.2d at 180; (SAC ¶¶ 268-73, ECF No. 175.).

Inter City consents to dismissal of its New Jersey consumer fraud claims (Count XIX) against STTC without prejudice.  (Inter City Mem. Opp'n STTC Mot. Dismiss 4-5, ECF No. 197.)  Accordingly, Count XIX is dismissed without prejudice.

STTC moves to dismiss Inter City's New York General Business Law § 349 claim, arguing that Inter City has failed to adequately allege "consumer-oriented" conduct.  (STTC Mem. Supp. Mot. Dismiss 23-24, ECF No. 182-1.)  Inter City argues that it has alleged consumer-oriented conduct because, as alleged, "the [e]ffect . . . is the lessening of competition upon Inter City's departure from the market which . . . would allow prices to rise" and "this scheme stifles competition by driving Inter City's customers to its competitor."  (Inter City Mem. Opp'n STTC Mot. Dismiss 12-13, ECF No. 197.)  Inter City points to an allegation that a specific customer purchased tires from STTC as a result of this scheme.  (Id. 13, ECF No. 197.)  However, as explained in Section II.B, supra, the SAC alleges indirect sales to consumers.  For the same reasons outlined in Section II.B, supra, the court finds that Inter City has failed to

allege consumer-oriented conduct sufficient to state a claim under § 349.  Accordingly, Inter City's § 349 claim, Count XX, is dismissed.[8]

It is therefore

**ORDERED** that TCi's motion to dismiss, docket number 185, is granted in part and denied in part as set out.  It is further

**ORDERED** that Meurer, Pasquet, and Schafer's motion to dismiss, docket number 184, is granted as set out.  It is further

**ORDERED** that Michelin's motion to dismiss, docket number 183, is granted in part and denied in part as set out.  It is further

**ORDERED** that STTC's motion to dismiss, docket number 182, is granted in part and denied in part as set out.  It is further

**ORDERED** that STTC's motion to dismiss, docket number 152, is denied as moot.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
May 28, 2014

---

[8] Having decided the merits of STTC's second motion to dismiss the second amended counterclaim, STTC's motion to dismiss the first amended counterclaim is denied as moot.